EVELYN McGINNIS, Respondent, *v.* BANKERS LIFE COMPANY, DES MOINES, IOWA, Defendant, and ASSOCIATED TRANSPORT, INC., Appellant.

Second Department, July 13, 1972.

*Casey, Lane & Mittendorf (William H. Cusick and William E. Kelly* of counsel), for appellant.

*Leon Wasserman* for respondent.

BENJAMIN, J. The plaintiff, Evelyn McGinnis, is the beneficiary of a group life insurance certificate issued to her husband, William J. McGinnis, now deceased, under a plan of group insurance for employees entered into between defendant Associated Transport, Inc. (hereinafter referred to as "Associated Transport"), her husband's employer, and defendant Bankers Life Company, Des Moines, Iowa (hereinafter referred to as "Bankers Life"). Bankers Life disclaimed liability under the certificate. The plaintiff, alleging that the policy was in effect at the time of death, seeks to recover the death benefit, some $5,000, from Bankers Life. Alternatively, she seeks to recover an equivalent amount from Associated Transport on the theory that it wrongfully terminated the insured's coverage.

At the close of the defendants' proof, the Civil Court of the City of New York directed a verdict in the plaintiff's favor against both defendants and judgment was entered accordingly. The Appellate Term, Second and Eleventh Judicial Districts, reversed the judgment against defendant Bankers Life and dismissed the first cause of action. It affirmed the judgment against defendant Associated Transport. We granted defendant Associated Transport's motion for leave to appeal to this court. The plaintiff did not cross-move for leave to appeal insofar as the order reversed the judgment against Bankers Life and dismissed her cause of action against that defendant.

The question before us is whether Associated Transport had a duty to advise its employee that his employment was terminated for insurance purposes and to advise him of the conversion privileges which were then available to him without evidence of insurability. We hold that these duties existed.

The essential facts are not in dispute. Bankers Life issued a group policy, bearing number GL72, to Associated Transport effective December 1, 1942. Under the policy certain employees were eligible to apply for contributory group insurance. William McGinnis applied for coverage and he was issued a certificate of insurance effective November 15,

1948. The original certificate of insurance was superseded by certificate bearing number 11584, effective February 1, 1957. The plaintiff is the named beneficiary on the certificate.

The policy (as amended in 1962) provides that insurance coverage terminates on the date of termination of employment. Termination of employment for insurance purposes is defined therein as the "cessation of active work as an employee, except: (a) if an Employee's cessation of active work is caused by sickness * * * his employment may be deemed to continue until payments for such Employee's insurance are discontinued by the Employer." The policy also contains the conversion privilege required by paragraph (e) of subdivision 1 of section 161 of the Insurance Law. Under the conversion clause the employee is entitled to be issued an individual policy of insurance without evidence of insurability upon his application with premium within 31 days after termination of employment. The policy also requires Associated Transport to keep records of employees insured under it and to furnish periodically to the insurer information as to new employees who become insured, changes in beneficiaries, and terminations of insurance coverage. Premium payments are made by Associated Transport to Bankers Life by a single Associated Transport draft which includes the sum of insurance premiums on behalf of all employees. In the case of contributory group coverage, such as the insured's herein, his share of the premium is deducted from his payroll check.[1]

On November 12, 1965, William McGinnis suffered a heart attack. He ceased active employment on that date and never returned to work. He received no wages after November 13, 1965. Associated Transport paid no further premiums for him. It did not advise him that his employment had terminated for insurance purposes and that it would not remit premiums for him during his illness, as was its option, or that he had the afore-mentioned conversion privilege. William McGinnis died on May 31, 1966, without having exercised the conversion privilege. Shortly after the insured's death the plaintiff submitted a claim for death benefits to Associated Transport. The claim was forwarded to Bankers Life along with a letter dated June 7, 1966. The letter advised that no premium had been forwarded for Mr. McGinnis after November 13, 1965; that Mr. McGinnis had died on May 31, 1966;

1. It is undisputed that Bankers Life does not know the names of those insured under the policy at the time it receives their premiums. This information is obtained as needed from the records of Associated Transport.

and that he had not actually been terminated as an employee although he received no wages after November 13, 1965.

In our opinion, Bankers Life is not liable for the claimed death benefit. Under the terms of the policy group coverage automatically terminated upon the insured's cessation of active work, which event occurred on November 12, 1965. Associated Transport did not elect to continue the coverage during the insured's disability as was its right. The insured did not exercise his conversion privilege within 31 days after the date employment terminated and he did not die within this period (death within this period would be deemed a conversion under the policy). In this connection we note the effect of subdivision 3 of section 204 of the Insurance Law as it read at the times here in question. It provided in part: "In the event a group life insurance policy hereafter issued * * * permits a certificate-holder to convert to another type of life insurance within a specified time after the happening of an event, such certificate-holder shall be notified of such privilege and its duration within fifteen days after the happening of the event, provided that if such notice be given more than fifteen days, but less than ninety days after the happening of such event, the time allowed for the exercise of such privilege of conversion shall be extended for fifteen days after the giving of such notice. If such notice be not given within ninety days after the happening of the event, the time allowed for the exercise of such conversion privilege shall expire at the end of such ninety days."

In the instant case, as above stated, no notice was given to the insured of the conversion privilege. By operation of the statute, therefore, the privilege of conversion was extended to 90 days after the happening of the specified event (*De Ville* v. *Continental Assur. Co.*, 10 A D 2d 386, affd. 8 N Y 2d 1080; *Payne* v. *Equitable Life Assur. Soc. of U. S.*, 14 A D 2d 266, affd. 11 N Y 2d 1006; *Miller* v. *Metropolitan Life Ins. Co.*, 64 Misc 2d 658; *Oakley* v. *National Western Life Ins. Co.*, 294 F. Supp. 504). However, the insured died on May 31, 1966, more than 90 days after the defined event, which occurred on November 12, 1965. Accordingly, all rights under the policy had expired and the insurer is not liable to the beneficiary for the death benefit.

We now examine the ground for liability against Associated Transport. The Appellate Term stated in its opinion: "The evidence warranted a direction of verdict in plaintiff's favor against defendant-employer predicated upon its failure to

advise the employee that his employment had been terminated for insurance purposes and in failing to advise him of the conversion privileges which were then available to him without evidence of insurability " (*McGinnis* v. *Bankers Life Co.*, N. Y. L. J., May 26, 1971, p. 19, col. 4).

The appellant's principal contention is that until 1940 there was no statutory or common-law rule requiring that a certificate holder be given notice by anyone of his group conversion privileges, because the insured was legally obligated to know his rights under the policy. The appellant further contends that in 1940, subdivision 3 of section 204 of the Insurance Law was enacted (L. 1940, ch. 208) to remedy this situation only to the extent indicated by the terms of the statute. (The operation of the statute is discussed, *supra*.) It is argued that the Legislature did not intend to upset the then-existing common-law rule that notice of the conversion privilege is not required (*Chrosniak* v. *Metropolitan Life Ins. Co.*, 121 Misc. 453, affd. 209 App. Div. 846; see, also, *Ogrodowski* v. *Aetna Life Ins. Co.*, 36 Misc 2d 318).

We disagree, although we do not hold that liability against Associated Transport is founded merely upon the impact of the statute. The enactment of this statute was clearly intended to benefit those insured under group policies such as the one in the instant case (*De Ville* v. *Continental Assur. Co.*, 10 A D 2d 386, affd. 8 N Y 2d 1080, *supra*) and not to limit any common-law right an employee had or might have. The Joint Legislative Committee on Revision of Insurance Laws stated in its report to the Legislature: " Very often an employee who severed his employment did not realize that he had this [conversion] privilege until too late to exercise it. This bill provides that any such employee shall be notified of such privilege within fifteen days after his employment has terminated, and that if the notice is not given he shall have ninety days from the time his employment ceased to convert his certificate. It is hoped that this bill will make it possible for all such persons to have an opportunity to convert their certificates if they so desire " (N. Y. Legis. Doc., 1940, No. 84, p. 17). This statement is indicative of a rather clear legislative intent that it is the public policy of this State that employees insured under this type of insurance " have an opportunity to convert their certificates if they so desire." As previously noted, a conversion privilege of this type is in substance required in group life insurance policies delivered in this State (Insurance Law, § 161, subd. 1, par. [e]).

The duty of the employer to give the notice in question is but part of an employer's duty of good faith and due care in attending to the policy and the employer should make clear to the employee anything required of him to keep the policy in effect (31 N. Y. Jur., Insurance, § 1665; 44 Am. Jur. 2d, Insurance, § 1878; *Neider* v. *Continental Assur. Co.,* 213 La. 621). The majority of jurisdictions are in accord with our view (*Walker* v. *Occidental Life Ins. Co.,* 67 Cal. 2d 518). We are in accord with the view of the *Walker* case (*supra*) "that the privilege of converting the policy regardless of an employee's physical condition is a valuable property right, that it would be inequitable to hold that an employee may be deprived of this right without his knowledge at the whim of the employer, and that the inclusion of such a [conversion] clause in the policy implies an intention that the employee should have knowledge of the precise date of termination of his employment" (p. 523 [bracketed word added]).[2]

It follows that Associated Transport breached its duties to the insured, causing the damages complained of to the beneficiary. We note that compliance with the duties herein imposed is not an onerous burden for employers. One commentator in this field states: "The most common method of complying with the law is to include in the employee's last pay envelope a slip advising him of his conversion privilege and giving him directions for making application for the individual policy" (Gregg, Group Life Insurance [3d ed.], p. 71).

The appellant's second argument is that the judgment for the plaintiff cannot stand because she has not proved wrongful termination of the coverage as alleged in the amended complaint (*Zeder* v. *Church of St. Stanislaus,* 275 App. Div. 796).

Again we must disagree. *Zeder* is an example of a "theory of the pleadings" case of which *Barnes* v. *Quigley* (59 N. Y. 265, 267) is a classic example: "The complaint is for fraud, and not upon contract. Whether the facts stated constitute a cause of action [upon contract] is not material" (bracketed matter added). Modern civil practice codes such as the CPLR have abolished technical rules of pleading such as the one relied upon by the appellant. Thus there is only one form of action (CPLR 103, subd. [a]) and the pleading need give only

---

2. The minority rule, said the court in *Walker* (*supra*), is based on the view that "in the absence of a statutory or contractual provision specifying that notice is required, the courts cannot judicially insert such a provision into the contract" (p. 523).

notice of the facts intended to be proved and the material elements of the action (CPLR 3013). The court has the power to grant any type of relief within its jurisdiction appropriate to the proof whether or not demanded (CPLR 3017, subd. [a]). In the instant case the plaintiff sought to recover the face value of the certificate on the ground of wrongful termination and has recovered on the ground of breach of a duty owed to the insured. We find no infirmity with this procedure in the circumstances presented herein (CPLR 3013, 3017).

Accordingly, the order of the Appellate Term should be affirmed insofar as appealed from, with costs.

MUNDER, Acting P. J., GULOTTA, CHRIST and BRENNAN, JJ., concur.

Order of the Appellate Term, Second and Eleventh Districts, dated May 20, 1971, affirmed insofar as appealed from, with costs.

